UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB R. ENGLE, | ) | CIVIL ACTION NO. 4:24-CV-543 |
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MATTHEW J. KIESKI, *et al.*, | ) | |
| Defendants | ) | |

## REPORT AND RECOMMENDATIONS

### I.    INTRODUCTION

Jacob R. Engle ("Plaintiff") is an inmate currently confined in SCI Greene. He was arrested in June 2023 after his Parole Agents discovered a cellular telephone in his possession, and then was charged with failing to register under Pennsylvania's Sex Offender Registration and Notification Act ("SORNA") in January 2024. Plaintiff initiated this federal civil rights lawsuit against three parole agents, two city police officers, a prosecutor, a judge, Tom Wolf, Josh Shapiro, and Northumberland County, in their individual and official capacities. Along with his Complaint, Plaintiff requested leave to proceed *in forma pauperis*.

Plaintiff's request to proceed *in forma pauperis* was granted. Therefore, his Complaint was subject to the screening provisions in 28 U.S.C. § 1915(e)(2). Under this statute, the Court is required to dismiss any action that is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief

against a defendant who is immune from such relief.[1] After reviewing Plaintiff's Complaint, we issued an Order explaining that, without amendment, his case may be subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii). We gave Plaintiff an opportunity file an amended complaint on or before July 22, 2024. To date, no amended complaint has been received. Accordingly, it will be recommended that Plaintiff's Complaint be dismissed without leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and that this case be closed.

## II.    BACKGROUND AND PROCEDURAL HISTORY

According to a publicly available state court docket sheet, Plaintiff pleaded guilty to a sexual assault charge involving a person under the age of 16.[2] His sentence for this crime required that he register as a sexual offender under SORNA.[3] We infer that Plaintiff is required to disclose his telephone numbers and social media accounts to the Pennsylvania State Police as part of his sentence.

On June 12, 2023, Plaintiff was on parole, under the supervision of State Parole Agents based in Williamsport, Pennsylvania. (Doc. 1, p. 1) (alleging state parole agents showed up at his home); (Doc. 1, p. 5) (alleging that Plaintiff had been on state parole for five months with no history of flight). Plaintiff alleges that two

---

[1] 28 U.S.C. § 1915(e)(2)(B).

[2] Docket Sheet, *Commonwealth v. Engle*, No. CP-49-CR-0000740-2014 (C.C.P. Northumberland Cnty.) available at https://ujsportal.pacourts.us (last accessed Feb 4, 2025).

[3] *Id.*

Parole Agents (Defendants Kieski and Stout) and two Shamokin Police Officers (Defendants Jenkins and Siko) "showed up" at his home. (Doc. 1, p. 4).

Plaintiff suggests that, when they arrived, the Parole Agents relied on "inadmissible 2nd party hearsay" to conduct a search of Plaintiff's home and person. (Doc. 1, p. 4). That search uncovered a cellular telephone.

During that search, Defendant Kieski opened Plaintiff's bathroom door "while Plaintiff was completely naked." (Doc. 1, p. 5). After doing so, Defendant Kieski allegedly made inappropriate comments about Plaintiff's genitalia and offered to overlook a parole violation in exchange for sexual favors. *Id.* Although Defendant Stout did not make similar sexual advances, Plaintiff alleges she called him a "monster," "child molester," and other vulgar names. (Doc. 1, p. 4).

Plaintiff alleges that the Shamokin Police Officers (Defendants Jenkins and Siko) arrested him. *Id.* Like the search, Plaintiff alleges that this arrest was made based on the "inadmissible second party hearsay" provided by Defendants Kieski and Stout, and the cellular telephone (discovered during the search). *Id.* It appears that Plaintiff has been in custody since the day of the search, but Plaintiff does not allege why he was arrested or what he was charged with in June 2023.

On January 4, 2024, Plaintiff was charged in Northumberland County with "failing to register" with the Pennsylvania State Police in violation of 18 Pa. C.S. § 4915.2(a)(1).[4]

Plaintiff appeared before a Magisterial District Judge (Defendant Zalinski) for his preliminary arraignment on January 18, 2024, and for his preliminary hearing on February 27, 2024.[5] At the preliminary hearing, the failure to register charge was bound over to the Northumberland County Court of Common Pleas.[6] The criminal case is ongoing.

On April 1, 2024, Plaintiff lodged this civil rights action in federal court against the following defendants in their official and individual capacities:

(1)    Matthew J. Kieski, a State Parole Supervisor;

(2)    Susan Stout, a State Parole Agent;

(3)    Deborah Carpenter, Secretary of the State Parole Board;

(4)    Derek Jenkins, a Shamokin Police Officer;

(5)    Raymond Siko, the Shamokin Police Chief;

(6)    Williams Zalinski, a Magisterial District Judge;

(7)    Northumberland County;

---

[4] Docket Sheet, *Commonwealth v. Engle*, No. MJ-08303-CR-0000007-2024 (Magis. Ct. Northumberland Cnty. Jan. 4, 2024) available at https://ujsportal.pacourts.us (last accessed Feb. 4, 2025).

[5] *Id.*

[6] *Id.*; *see also* Docket Sheet, *Commonwealth v. Engle*, No. CP-49-CR-0000294-2024 (C.C.P. Northumberland Cnty.).

(8)    A "John Doe" prosecutor from the Northumberland County District Attorney's Office;

(9)    Tom Wolf; and

(10)   Josh Shapiro.

As relief, Plaintiff seeks:

(1)    "New 'Illegal' S.O.R.N.A. charged [sic] dropped";

(2)    "$1.5 Million in S.O.R.N.A. damages for <PUBLIC SHAMING REGISTRY> that effected Plaintiff[s] "RIGHT TO REPUTATION AND HONOR";

(3)    "$10.5 Million for future damages for S.O.R.N.A. <Public Shaming Registry>";

(4)    "$700 Million from Mr. Matthew J. Kieski for conducting an "ILLEGAL" home search and Plaintiff[s] PTSD";

(5)    "$700 Million from Mr. Matthew J. Kieski for 'FUTURE' PTSD, counseling, and any other therapy required to recover";

(6)    "$5 Million from Susan Stout for conducting an 'ILLEGAL' home search and allowing Mr. Kieski to cause Plaintiff[s] PTSD";

(7)    "$14.5 Million from the Shamokin Police Department for going on 'INADMISSIBLE 2nd PARTY HEARSAY' from the parole agent[s] which caused significant damage to Plaintiff[s] life of loss of job and reputation";

(8)    "$10 Million from Mr. Williams J. Zalinski for holding 2 'BAD FAITH' hearings and holding an 'ILLEGAL' charge over for Court of Common Plea[s] with 'NO' evidence";

(9)    "Plaintiff also wants Mr. Matthew J. Kieski bound over with 'SEXUAL HARASSMENT' charges and any other charges seemed fit."

(Doc. 1, p. 6) (errors and emphasis in original).

On May 16, 2024, Plaintiff's request to proceed *in forma pauperis* was granted and his Complaint was deemed filed. (Doc. 7). That same day, the Court issued an Order advising Plaintiff that, as written, his Complaint failed to state a claim upon which relief could be granted. (Doc. 8). Plaintiff was warned that, without amendment his Complaint may be dismissed, and was given until June 17, 2024 to submit an amended complaint. *Id.* On June 20, 2024, the Court's May 16, 2024 Orders were returned as undeliverable. (Doc. 10). On June 21, 2024, the Court issued an Order affording Plaintiff additional time—until July 22, 2024—to submit an amended complaint.[7] No amended complaint was received.

## III.    LEGAL STANDARD

This Court has a statutory obligation to conduct a preliminary review of complaints brought by plaintiffs who have been granted leave to proceed *in forma pauperis* and must dismiss a case *sua sponte* if: (1) the allegation of poverty is untrue, (2) the action is frivolous or malicious, (3) the complaint fails to state a claim upon which relief may be granted, or (4) the complaint seeks money damages from a defendant who is immune from suit.[8]

---

[7] Plaintiff also filed what we construed as motions to supplement his Complaint (Docs. 5, 6), a Supplement containing a § 1983 claim against Plaintiff's public defender (Doc. 5-3), and supplemental exhibits (Docs. 5-1, 5-2, 6-1). On May 16, 2024, the Court denied Plaintiff's requests to supplement as moot, and advised that he may include additional claims and attachments in an amended complaint. (Doc. 9).

[8] 28 U.S.C. § 1915(e)(2).

When conducting this screening analysis, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9] Therefore, the district court must:

> "accept the facts alleged in [a plaintiff's] complaint as true," "draw[ ] all reasonable inferences in [his or her] favor," and "ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible . . . claim." *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015).[10]

A court need not "credit a complaint's 'bald assertions' or 'legal conclusions,'"[11] and does not need to assume that a plaintiff can prove facts not alleged.[12]

In screening complaints under 28 U.S.C. § 1915(e)(2), the Court generally relies on the complaint, attached exhibits, matters of public record, and items subject to judicial notice.[13] Therefore, a district court may properly take judicial notice of state court records during its screening analysis, and has done so in this case.[14]

---

[9] *See, e.g., Endrikat v. Ransom*, No. 1:21-CV-1684, 2022 WL 4111861, at *2 (M.D. Pa. Sept. 8, 2022) ("In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.").

[10] *Shorter v. United States*, 12 F. 4th 366, 374 (3d Cir. 2021).

[11] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted).

[12] *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[13] *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

[14] Fed. R. Evid. 201; *Sands*, 502 F.3d at 268; *Ernst v. Child & Youth Servs. of Chester Cnty.*, 108 F.3d 486, 498-99 (3d Cir. 1997) (observing that a Court may take judicial notice of its own records, especially in the same case); *Commonwealth of Pa. v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967) ("a federal court may take judicial notice of matters of record in state courts within its jurisdiction.").

Moreover, where a litigant is proceeding without an attorney, his pleading:

must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *U.S. ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) (A "petition prepared by a prisoner . . . may be inartfully drawn and should . . . be read 'with a measure of tolerance'"); *Freeman v. Department of Corrections*, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997) (*overruled on other grounds*); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

However, there are limits to the court's procedural flexibility: "pro se litigants still must allege sufficient facts in their complaints to support a claim . . . they cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citations omitted).[15]

## IV.    DISCUSSION

In deference to Plaintiff's *pro se* status, we have done our best to identify the nature of Plaintiff's claims and the facts underlying those claims. Plaintiff's Complaint appears to be a § 1983 action related to a recent criminal charge for failing to register information with the Pennsylvania State Police. We will begin by

---

[15] *Graham v. Pa. Dep't of Corr.*, No. 21-148, 2022 WL 2874724, at *4 (W.D. Pa. Mar. 21, 2022), *report and recommendation adopted*, 2022 WL 2871331 (W.D. Pa. July 21, 2022).

explaining why Plaintiff's claims for non-monetary relief cannot be granted in this § 1983 action, then will discuss each of Plaintiff's claims for money damages.

### A.    PLAINTIFF'S REQUESTS FOR NON-MONETARY RELIEF

Plaintiff seeks two forms of non-monetary relief in his Complaint. First, he requests that the new "illegal" S.O.R.N.A. charges be dropped. Second, Plaintiff requests that Defendant Kieski be criminally prosecuted for sexually harassing Plaintiff.

Plaintiff's request that his charges be dropped is effectively a request that he be immediately released from prison. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from imprisonment, his sole federal remedy is a writ of habeas corpus."[16] Although Plaintiff cites to 28 U.S.C. § 2241 in his Complaint, we decline to construe this action, which Plaintiff titles as a "Complaint for a Violation of Civil Rights," as a

---

[16] *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also Jaffre v. Atl. Cnty. Prosecutor's Office*, 695 F.App'x 38, 41-42 (3d Cir. 2017) (finding that to the extent a litigant sought "dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F.App'x 756, 759 (3d Cir. 2010) (affirming a district court's dismissal, and explaining that to the extent the plaintiff "is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus.").

habeas petition.[17] Plaintiff's request to have his charges "dropped" is a form of habeas relief, is not properly brought in a civil rights action under 42 U.S.C. § 1983, and instead should be brought separately in a properly filed habeas action.

Regarding filing charges Agent Kiesky "federal district courts . . . cannot initiate criminal prosecutions."[18] Plaintiff cannot initiate a criminal proceeding against a defendant by filing a civil complaint or seek the criminal prosecution of a Defendant as a form of civil damages.

Therefore, Plaintiff cannot be granted the non-monetary relief he requests in his Complaint. Those requests for relief should be dismissed.

Next, we turn to Plaintiff's claims for monetary damages.

### B.    PLAINTIFF'S CLAIMS FOR MONEY DAMAGES AGAINST DEFENDANTS KIESKI AND STOUT

Plaintiff identifies Defendants Kieski and Stout as parole agents based in Williamsport, Pennsylvania. He alleges that these Defendants unlawfully searched

---

[17] To the extent Plaintiff intended to seek habeas relief, he has not named a proper respondent, and his filing does not comply with this Court's local rules. *See* L.R. 83.32.1 (requiring that habeas petitions prepared by litigants proceeding without an attorney must be written using a standard form).

[18] *Simmons v. Roxbury Police Dep't.*, Civ. No. 17-2526 (JMV), 2017 WL 5188060, at *3 (D.N.J. Nov. 9. 2017) (striking a litigant's request to initiate a criminal prosecution from a complaint) (citing *United States v. Santtini*, 963 F.2d 585, 595 (3d Cir. 1992) ("[a]s a general proposition, matters of law 'enforcement' are within the power of the executive branch.") (citing *United States v. Russell*, 411 U.S. 423, 435 (1973) ("execution of the federal laws under our Constitution is confided primarily to the Executive Branch of the Government"))).

his home based on "inadmissible 2nd party hearsay" in violation of Plaintiff's Fourth Amendment rights.[19] Defendants are sued in their individual and official capacities. For the reasons explained herein, both Plaintiff's individual capacity claims, and official capacity claims seeking money damages from these Defendants should be dismissed for failure to state a claim.

### 1. Plaintiff's Individual Capacity Claims Against Defendants Kieski and Stout Related to the Unlawful Search

The Fourth Amendment provides, in pertinent part, that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."[20]

> "The fundamental task of any Fourth Amendment analysis is assessing the reasonableness of the government search." *United States v. Sczubelek*, 402 F.3d 175, 182 (3d Cir. 2005). Whether a search is reasonable under the general Fourth Amendment totality of the circumstances approach "is determined by assessing, on the one hand,

---

[19] All of Plaintiff's claims under the United States Constitution are brought pursuant to 42 U.S.C. § 1983. "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). "It is well settled that § 1983 does not confer any substantive rights, but merely 'provides a method for vindicating federal rights elsewhere conferred.'" *Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294, 297 (3d Cir. 2017) (quoting *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 104 (3d Cir. 2014)). To establish a claim under § 1983, a plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

[20] U.S. Const. amend IV.

the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006); *see United States v. Williams*, 417 F.3d 373, 378 (3d Cir. 2005). Parolees have "severely diminished expectations of privacy by virtue of their status alone" because they consent to restrictive parole conditions such as reporting requirements, travel limitations, and drug testing in exchange for early release from prison. *Samson,* 547 U.S. at 852, 126 S.Ct. 2193. By contrast, a state's "overwhelming interest" in supervising parolees to reduce recidivism "warrant[s] private intrusions that would otherwise not be tolerated under the Fourth Amendment." *Id.* at 853, 126 S.Ct. 2193.

Therefore, a search of a parolee's residence may be reasonable even if conducted without a warrant and without probable cause. *See United States v. Knights*, 534 U.S. 112, 121, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001); *Griffin v. Wisconsin*, 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987); *United States v. Hill*, 967 F.2d 902, 909 (3d Cir. 1992).[] Reasonable suspicion suffices to justify a parole agent's warrantless search of premises that parolees are on or have control of, including a parolee's residence, when an agent reasonably believes that the premises contain evidence of a parole violation. *See United States v. Baker*, 221 F.3d 438, 443–44 (3d Cir.2000); *Hill*, 967 F.2d at 908– 09; 42 Pa.C.S.A. § 9912(d)(2) (authorizing parole agents to conduct "property searches . . . if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision").[] An analysis of reasonable suspicion considers, under the totality of the circumstances, whether an official "has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).[21]

Plaintiff alleges that he is currently on parole, and that two parole agents conducted a search of his residence. The only information alleged to support his

---

[21] *Keating v. Pittston City*, 643 F.App'x 219, 223-24 (3d Cir. 2016) (footnotes 4 and 5 omitted).

position that this search was not reasonable, is that it was based on "second party hearsay." Thus, it appears that the parole agents searched Plaintiff's home based on information supplied by another person. Plaintiff does not describe what that third person told them. Because Plaintiff's Fourth Amendment claims against the Parole Agents lack adequate detail they should be dismissed for failure to state a claim.

### 2.    Plaintiff's Individual Capacity Claims against Defendant Kieski for Sexual Harassment

Plaintiff alleges that Defendant Kieski opened Plaintiff's bathroom door while Plaintiff was naked, made inappropriate comments about Plaintiff's genitalia, and offered to overlook a parole violation in exchange for sexual favors. Plaintiff does not, however, articulate a legal theory to support this claim. In the absence of one, we will construe his allegations as a claim under the Eighth Amendment.[22] In the prison context,

> Allegations of sexual harassment of a prisoner by a corrections officer may state an Eighth Amendment claim under § 1983 so long as two elements are met. *See Walker v. Taylorville Corr. Ctr.*, 129 F.3d 410, 414 (7th Cir.1997); *Mathie v. Fries*, 121 F.3d 808 (2d Cir.1997); *Freitas v. Ault*, 109 F.3d 1335, 1338–39 (8th Cir.1997); *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir.1997). The objective element requires severe or repetitive sexual abuse of an inmate by a prison officer. *Harris v. Zappan*, No. CIV A 97–4957, 1999 WL 360203, at *4 (E.D. Pa. May 28, 1999) (citation omitted). The subjective element is whether the

---

[22] *See e.g. Rangel v. Lorum*, No. 19-C-451, 2019 WL 5424694, at *2 (E.D. Wis. Oct. 23, 2019) (observing that "[s]ince a person serving parole is still under sentence of the court, it would appear that sexual abuse by a probation or parole agent could also constitute cruel and unusual punishment in violation of the Eighth Amendment, which is applicable to the states through the Fourteenth Amendment.").

official had a sufficiently culpable state of mind. *Id.* (citation omitted). However, a single isolated incident of sexual harassment that is not in and of itself severe, is not sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *See Boddie*, 105 F.3d at 857 (male prisoner's allegations that female officer touched his penis and said, "[Y]ou know your [sic] sexy black devil, I like you," later bumped into him, and pressed her whole body against his body were not sufficiently serious to satisfy the objective component); *Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir.1998) (male inmate's claims that two officers grabbed his buttocks for a moment did not meet the objective component of Eighth Amendment); *see also Wright v. O'Hara*, No. CIV.A. 00–1557, 2004 WL 1793018, at *7 (E.D. Pa. Aug. 11, 2004).[23]

Plaintiff alleges that Defendant Kieski made comments on one occasion but did not touch Plaintiff in a sexual way and did not actually perform any sex act. While the conduct described, if true, is completely inappropriate, Plaintiff's allegations are not sufficiently serious to make out a constitutional claim of sexual harassment. Accordingly, this claim should be dismissed for failure to state a claim.

### 3.     Plaintiff's Official Capacity Claims for Money Damages Against Defendants Kieski and Stout

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[24]

Eleventh Amendment protections also extend to state agencies and officials of those agencies sued in their official capacity. Thus, because the Parole

---

[23] *Robinson v. Danberg*, 729 F.Supp.2d 666, 686 (D. Del. 2010).
[24] U.S. Const. amend. XI.

Department is an arm of the Commonwealth, its employees enjoy Eleventh Amendment protections when sued in their official capacities.[25]

Eleventh Amendment immunity is not, however, absolute. Three exceptions exist: (1) abrogation by an act of Congress; (2) waiver by state consent to suit; (3) suits against individual state officials for prospective relief to remedy an ongoing violation.[26] Plaintiff's § 1983 claims against Defendants Kieski and Stout do not fit within these exceptions. Congress has not abrogated states' sovereign immunity by enacting 42 U.S.C. § 1983.[27] Pennsylvania has not consented to suit.[28] Although Plaintiff sues Commonwealth employees in the official capacity, his request for money damages is not prospective injunctive relief. Therefore, Plaintiff's official capacity claims for money damages against Defendants Kieski and Stout should be dismissed.

---

[25] *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (observing that, "[a]s an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity.").

[26] *M.A. ex rel. E.S. v. State-Operated Sch. Dist. Of City of Newark*, 344 F.3d 335, 345 (3d Cir. 2003).

[27] *O'Hara v. Indiana Univ. of Pennsylvania*, 171 F.Supp.2d 490, 495 (W.D. Pa. 2001) (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979) and *Will v. Mich. Dep't. of State Police*, 497 U.S. 58, 66 (1989)).

[28] *O'Hara*, 171 F.Supp.2d at 495 (citing 42 Pa. C.S. § 8521).

C.    **PLAINTIFF'S INDIVIDUAL AND OFFICIAL CAPACITY CLAIMS FOR MONEY DAMAGES AGAINST DEFENDANTS CARPENTER AND SHAPIRO**

Plaintiff alleges that Defendant Carpenter is the Parole Board Secretary, and that she is sued in her individual and official capacity. (Doc. 1, p. 2). He alleges that Defendant Shapiro is the Governor of Pennsylvania and that he is sued in his individual and official capacity. *Id.* Plaintiff does not, however, allege any legal claim against Defendants Carpenter and Shapiro, or allege how they violated Plaintiff's rights.

Rule 8 of the Federal Rules of Civil Procedure explains that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."[29] Each averment must be "simple, concise, and direct."[30] "Fundamentally, Rule 8 requires that a complaint provide fair notice of what the claim is and the grounds upon which it rests."[31] As it pertains to Defendants Carpenter and Shapiro, Plaintiff does not provide fair notice of what claim he asserts against them and the grounds upon which these claims rest. Therefore, Plaintiff's claims against Defendants Carpenter and Shapiro in their individual and official capacities, as pleaded, should be dismissed for failure to state a claim.

---

[29] Fed. R. Civ. P. 8.

[30] Fed. R. Civ. P. 8(d)(1).

[31] *Bressi v. Northumberland Cnty. Children and Youth Servs.*, No. 23-2156, 2023 WL 8866573, at *1 (3d Cir. Dec. 22, 2023).

### D.    PLAINTIFF'S CLAIMS FOR MONEY DAMAGES AGAINST DEFENDANTS JENKINS AND SIKO

Plaintiff alleges that Defendants Jenkins and Siko are Shamokin Police Officers, and that these officers unlawfully arrested him. They are sued in their official and individual capacities. For the reasons explained herein, both Plaintiff's individual capacity claims, and official capacity claims seeking money damages from these Defendants should be dismissed.

#### 1.    Plaintiff's Individual Capacity Claims Against Defendants Jenkins and Siko

Plaintiff alleges that Defendants Jenkins and Siko arrested Plaintiff on June 12, 2023, without probable cause. We construe this as a Fourth Amendment claim of false arrest.

> To establish a claim for "false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). And "'where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest.'" *Harvard v. Cesnalis*, 973 F.3d 190, 202 (3d Cir. 2020) (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995)). Thus, to establish "'a claim for false imprisonment, a plaintiff must establish: (1) that [he] was detained; and (2) that the detention was unlawful.'" *Id.* (quoting *James*, 700 F.3d at 682–83).

> "The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that

an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). In other words, "'[p]robable cause exists if there is a fair probability that the person committed the crime at issue.'" *Williams v. City of York, Pennsylvania*, 967 F.3d 252, 263 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016)).[32]

Plaintiff alleges that he was arrested on June 12, 2023. Public records show he was charged with failing to register with the Pennsylvania State Police on January 4, 2024. Plaintiff does not plausibly allege that the Police Officers lacked probable cause to arrest him on June 12, 2023. Plaintiff does not allege why he was arrested on June 12, 2023, only that the arrest occurred after Parole Agents conducted an allegedly unlawful search and seized a cellular telephone. Plaintiff does not allege enough information about the circumstances within the arresting officers' knowledge from which this Court could reasonably infer that this arrest was unlawful. Because Plaintiff's claim lacks adequate detail, as pleaded, it should be dismissed.

### 2. Plaintiff's Official Capacity Claims Against Defendants Jenkins and Siko

Plaintiff also sues Defendants Jenkins and Siko in their official capacities. He alleges that Defendants are employed by the City of Shamokin. Plaintiff's official

---

[32] *Capriotti v. Sadowski*, 4:21-CV-00308, 2024 WL 778414, at *10 (M.D. Pa. Feb. 26, 2024).

capacity claims against Defendants Jenkins and Siko are effectively claims against the City of Shamokin.

The City of Shamokin is not vicariously liable under § 1983 for the actions of its officials.[33] Municipalities can, however, be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983."[34] "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict."[35] Customs are "'practices of state officials . . . so permanent and well settled' as to virtually constitute law."[36] Thus, "[l]iability is imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the moving force behind the constitutional tort of one of its employees."[37]

> If the alleged policy or custom at issue is a failure to train or supervise . . ., the plaintiff must show that this failure "amounts to 'deliberate indifference' to the rights of persons with whom [the municipality's]

---

[33] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (explaining that although municipalities can be liable as "persons" under § 1983, this liability extends only to its own illegal acts) (quoting *Pembauer v. Cincinnati*, 475 U.S. 469, 479 (1986)).

[34] *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[35] *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).

[36] *Id.*

[37] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991)) (internal quotations omitted).

employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "Ordinarily," this requires a plaintiff to identify a "'pattern of similar constitutional violations by untrained employees'" that "puts municipal decisionmakers on notice that a new program is necessary. . . ." *Id.* at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Otherwise, the plaintiff needs to show that failure to provide the identified training would "likely . . . result in the violation of constitutional rights" — i.e., to show that "the need for more or different training [was] so obvious." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).[38]

Plaintiff alleges that the City of Shamokin's failure to train its police officers to determine whether there is probable cause to make an arrest was the driving force behind the police officers' conduct. However, Plaintiff did not plead a plausible claim against the officers. Plaintiff's claim that the City of Shamokin was the driving force behind its Police Officers' decision to arrest Plaintiff without probable cause cannot proceed in the absence of a plausible constitutional claim against the officers.[39] Therefore, Plaintiff's failure to train claim against the City of Shamokin (pleaded as official capacity claims against the police officers) should also be dismissed.

---

[38] *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020).

[39] *See e.g.*, *Cody v. Pennridge Sch. Dist.*, No. 23-CV-0726-JMY, 2023 WL 7089931, at *10 (E.D. Pa. Oct. 25, 2023) (dismissing a plaintiff's *Monell* claim where the plaintiff did not plead a viable violation of his constitutional rights) (citing *Starzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008) and *Young v. City of Chester*, 764 F.App'x 262, 265 (Mar. 29, 2019)).

E.    PLAINTIFF'S CLAIMS FOR MONEY DAMAGES AGAINST DEFENDANT
      ZALINSKI

Plaintiff named Judge Zalinski in his official and individual capacities. For

the reasons explained herein, we find that these claims should be dismissed.

### 1.    Plaintiff's Individual Capacity Claims Against Defendant Zalinski

Plaintiff alleges that he appeared before Defendant Zalinski during court

proceedings on January 18, 2024, and February 27, 2024. Regarding Defendant

Zalinski, Plaintiff alleges:

> Defendant Zalinski of the District Court MDJ 08-3-03 held two (2) in
> "BAD FAITH" hearings without having any Probable Cause. Then Mr.
> Zalinski bound over a new charge to the Court of Common Plea[s], Mr.
> Zalinski also violated Plaintiff[s] 6th Amendment right to ( Reasonable
> ) Bail. Plaintiff[s] bail is in excessive amount even though he is on State
> Parole for 5 months with "NO" history of absconding, Mr. Zalinski also
> violated Plaintiff[s] " RIGHT TO REPUTATION AND HONOR"
> under Pa. Const. Art. 1: Sec 11 and/or Sec 26. Mr. Zalinski also did a
> "QUASI OFFENSE" which caused significant damages to Plaintiff[s]
> life.

(Doc. 1, p. 5) (errors, emphasis, and alterations in original). Plaintiff appears to

disagree with Defendant Zalinski's rulings made during Plaintiff's preliminary

arraignment and preliminary hearing.

Judges, however, are entitled to absolute immunity from civil rights claims

that are based on acts or omissions taken in their judicial capacity.[40] The Court must

---

[40] *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978).

engage in a two-part inquiry to determine whether judicial immunity is applicable.[41]

First, because immunity applies only to actions taken in a judge's judicial capacity,

the court must determine whether the challenged actions of the judge were taken in

his or her judicial capacity.[42] "Second, a judge is not immune for actions, though

judicial in nature, taken in the complete absence of all jurisdiction."[43] "A judge will

not be deprived of immunity because the action he took was in error, was done

maliciously, or was in excess of his authority."[44] Moreover,

> Immunity will not be forfeited because a judge has committed "grave
> procedural errors," *Stump*, 435 U.S. at 359, 98 S.Ct. at 1106, or because
> a judge has conducted a proceeding in an "informal and ex parte"
> manner. *Forrester* [*v. White*, 484 U.S. 219, 227 (1988)]. Further,
> immunity will not be lost merely because the judge's action is "unfair"
> or controversial. *See Cleavinger* [*v. Saxner*, 474 U.S. 193, 199–200
> (1985)] (immunity applies "however injurious in its consequences [the
> judge's action] may have proved to the plaintiff") (citation omitted);
> *Stump*, 435 U.S. at 363–64, 98 S.Ct. at 1108 ("Disagreement with the
> action taken by the judge . . . does not justify depriving that judge of his
> immunity. . . . The fact that the issue before the judge is a controversial
> one is all the more reason that he should be able to act without fear of
> suit.").[45]

The only allegations against Defendant Zalinski concern judicial

determinations made during Plaintiff's arraignment and preliminary hearings in a

---

[41] *Gallas v. Supreme Court of Pennsylvania,* 211 F.3d 760, 768 (3d Cir. 2000).
[42] *Id.*
[43] *Id.* at 768 (quoting *Mireles v. Waco*, 502 U.S. 9, 12 (1991)).
[44] *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (citations omitted).
[45] *Gallas*, 211 F.3d at 769.

pending state court criminal proceeding. Presiding over arraignments and preliminary hearings, and setting bail, are functions normally performed by a judge. Therefore, the conduct challenged in this case involves actions taken by Defendant Zelinski in his judicial capacity, and judicial immunity applies. Nothing in Plaintiff's complaint suggests these actions were taken in the absence of jurisdiction. Defendant Zalinski is therefore entitled to absolute immunity.[46]

Accordingly, all claims against Defendant Zalinski in his individual capacity should be dismissed.

---

[46] *Evans v. Lorah*, No. 20-22, 2020 WL 2813317, at *3 (W.D. Pa. May 11, 2020), *report and recommendation adopted*, 2020 WL 2793088 (W.D. Pa. May 29, 2020); *see also Blackwell v. Middletown Borough Police Dep't*, Civ. A. No. 12-825, 2012 WL 4033671, at *3-4 (M.D. Pa. May 30, 2012), *report and recommendation adopted*, 2012 WL 4025956 (M.D. Pa. Sept. 12, 2012) (dismissing *pro se* plaintiff's claims against a magisterial district judge for failure to state a claim at screening because "judicial immunity . . . expressly extends to Pennsylvania magisterial district court judges") (citing *Figueroa v. Blackburn*, 208 F.3d 435, 441 (3d Cir. 2000)); *see also Youst v. Lancaster City Bureau Police Dep't*, No. 20-3287, 2020 WL 6562073, at *3-4 (E.D. Pa. Nov. 9, 2020) (concluding magisterial district judge was entitled to absolute immunity where the only allegations against her rose from "judicial determinations she made and an order she entered in the course of [the plaintiff's] criminal arraignment and [in] setting his bail").

      2.     **Plaintiff's Official Capacity Claims Against Defendant Zalinski**

Plaintiff's official capacity claims against Defendant Zalinski amount to claims against the state itself since magisterial district judges are considered part of the Commonwealth's unified judicial system.[47] The Eleventh Amendment bars any suit against the Commonwealth for money damages in federal court. Accordingly, Plaintiff's official capacity claims against Defendant Zalinski seeking money damages should be dismissed because Defendant Zalinski is immune.

**F.    Plaintiff's Claims for Money Damages Against Northumberland County**

Regarding Northumberland County, Plaintiff alleges:

Defendant County of Northumberland (ETAL) violated Plaintiff[s] 8th and 14th Amend't and 5 Amend't. Plaintiff[s] 5th Amendment was

---

[47] *William-Whitfield v. Commonwealth Lehigh Cnty. Prison*, No. CV-21-4544, 2022 WL 657072 (E.D. Pa. Mar. 4, 2022) (citing *Green v. Domestic Rels. Section Ct. of Com. Pl. Compliance Unit Montgomery Cnty.*, 649 F.App'x 178, 180 (3d Cir. 2016) ("All courts in the unified judicial system are part of the Commonwealth[.]" (citing *Haybarger*, 551 F.3d at 198)); *Bern v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005) ("The Pennsylvania constitution envisions a unified state judicial system, of which the Judicial District is an integral component. From a holistic analysis of the Judicial District's relationship with the state, it is undeniable that Pennsylvania is the real party in interest in Benn's suit and would be subjected to both indignity and an impermissible risk of legal liability if the suit were allowed to proceed."); *Clark v. Kalteski*, No. 5:22-cv-81-JDW, 2022 WL 377402, at *3 (E.D. Pa. Feb. 8, 2022) (explaining that "the Lehigh County Court of Common Pleas . . . is part of Pennsylvania's Unified Judicial System"); *Youst*, 2020 WL 6562073, at *4 n.9 (explaining that " claims brought against [magisterial district judge] in her official capacity are really claims brought against the Commonwealth of Pennsylvania because, as a magisterial district judge within Pennsylvania's Unified Judicial System, [defendant magisterial district judge] is considered an official of

violated for the same offence "DOUBLE JEOPARDY" of a
**VOLATILE**, " UN-ENFORCEABLE", "UN-CONSTITUTIONAL"
S.O.R.N.A. < **PUBLIC SHAMING REGISTRY.** > Plaintiff[s] 8th
Amendment right was violated by giving the Plaintiff excessive bail
and being incarcerated for a punishment that is "DOUBLE
JEOPARDY" is classified as cruel and unusual punishment. They also
turned a blinf eye to the "CORRUPTION" of their county.

(Doc. 1, p. 5) (emphasis, errors, and alterations in original).

As explained in Section IV(D)(2) of this Report, to bring a claim against a

municipality, like Northumberland County, Plaintiff must allege that: (1) the County

has a policy or custom that is itself unconstitutional; or (2) a County policy or custom

was the driving force behind a violation of Plaintiff's constitutional rights. Plaintiff

has alleged neither. Accordingly, Plaintiff's claims against Northumberland County

should be dismissed.

### G.    PLAINTIFF'S CLAIMS FOR MONEY DAMAGES AGAINST THE JOHN DOE DISTRICT ATTORNEY

Regarding the "John Doe" District Attorney, Plaintiff alleges:

Defendant "John Doe" of the District Attorney[s] Office violated
Plaintiff[s] "RIGHT TO REPUTATION AND HONOR" under Pa.
Const. Art1: Sec. 11 and or Sec. 26. District Attorney "John Doe" also
did a "QUASI-OFFENSE" which caused significant damages to
Plaintiff[s] life. "John Doe" also approved a "BAD FAITH"
preliminary hearing which bound over a "NONJUSTICIABLE" charge
to the Court of Common Plea[s]. "John Doe' also used <u>FRUIT OF
THE POISONOUS TREE</u>" which gathered evidence "ILLEGALLY."

_____

the Commonwealth"); *see also* 42 Pa.C.S. § 301 ("The judicial power of the
Commonwealth shall be vested in a unified judicial system consisting of the: . . . (4)
Courts of common pleas [and] . . . (9) Magisterial district judges.")..

(Doc. 1, p. 5) (emphasis, errors, and alterations in original).

It is well-established that:

The doctrine of absolute immunity shields prosecutors from liability related to their official acts. *See Imbler v. Pachtman*, 424 U.S. 409, 417–20, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Under this doctrine, a prosecutor is absolutely immune from liability for money damages under § 1983 for acts "within the scope of his duties in initiating and pursuing a criminal prosecution." *Id.* at 410, 96 S.Ct. 984. While this immunity "extends to acts that are 'intimately associated with the judicial phase of the criminal process,'" *Yarris v. Cnty. of Del.*, 465 F.3d 129, 135 (3d Cir. 2006) (quoting *Imbler*, 424 U.S. at 430–31, 96 S.Ct. 984), it does not include "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings," *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). "Ultimately, whether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris*, 465 F.3d at 136 (citing *Buckley*, 509 U.S. at 274, 113 S.Ct. 2606).

The Third Circuit has explained that "a person is not immune from suit for every wrong he commits just because he happens to be employed as a prosecutor: the 'inquiry focuses on the nature of the function performed, not the identity of the actor who performed it.'" *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (quoting *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008)). A court's analysis of absolute immunity has two steps: first, "[t]he court must ascertain just what conduct forms the basis for the plaintiff's cause of action," and second, "it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* The first step "focuses on the unique facts of each case and requires careful dissection of the prosecutor's actions." *Id.* (quoting *Odd*, 538 F.3d at 210).[48]

---

[48] *Ekwunife v. City of Phila.*, 245 F. Supp.3d 660, 670-71 (E.D. Pa. 2017).

Plaintiff's claim against the John Doe prosecutor is based solely on his conduct as an advocate in the judicial phase of the criminal process—that is, initiating a prosecution and presenting the Commonwealth's case. He is entitled to prosecutorial immunity for this type of conduct. Therefore, Plaintiff's individual capacity claim against the prosecutor should be dismissed. As to Plaintiff's official capacity claims against the John Doe prosecutor, John Doe is immune from liability under the Eleventh Amendment to the United States Constitution.[49]

## H. PLAINTIFF'S CLAIMS FOR MONEY DAMAGES AGAINST DEFENDANT WOLF

Regarding Defendant Wolf, Plaintiff alleges:

Defendant Tom Wolf turned a blind eye to the corruption of NOrthumberland County. If Tom Wolf kept a better eye on the County of Northumberland they would have never held two (2) "BAD FAITH" hearing[s] and they would of made sure Shamokin Police would have had "ADEQUATE" training in determining the existence of Probable Cause. Tom Wolf would have also made sure State Parole Supervisor Matthew J. Kieski and Parole Agent Susan Stout would have acted in a Professional Manner when visiting state Parolee[s]. HAving turned a blind eye on Shamokin Police Department and Williamsport State Parole Agents conduct caused Plaintiff time in jail and a new criminal charge.

(Doc. 1, p. 5) (emphasis, errors, and alterations in original).

---

[49] *Carter v. City of Phila.*, 181 F.3d 339 (3d Cir. 1999) (observing that the Eleventh Amendment applies to official capacity claims against prosecutors where the conduct at issue was "on behalf of and in the name of the Commonwealth in investigating and prosecuting crimes within their district.").

Defendant Wolf can only be liable under § 1983 for his own actions or omissions.[50] If the actor is a supervisor, personal involvement could be established by allegations that the supervisor directed others to violate a plaintiff's rights, or actually knew of and acquiesced in the alleged violations.[51] Plaintiff must allege participation, direction, or actual knowledge and acquiescence with appropriate particularity.[52] "A mere hypothesis" about a defendant's involvement is not enough.[53] Plaintiff alleges that Defendant Wolf should have "kept a better eye" on the goings on in Northumberland County. Plaintiff does not allege Defendant Wolf was directly involved in any constitutional violation. He also does not allege that Defendant Wolf knew what occurred or specifically directed Defendants to engage in conduct that violated Plaintiff's rights. Thus, the Complaint does not include sufficient allegations of any involvement by Defendant Wolf. Accordingly, Plaintiff's claim against Defendant Wolf in his individual capacity should be

---

[50] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

[51] *Rode*, 845 F.2d at 1207 ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.").

[52] *Id.*

[53] *Payne v. Butts*, No. 22-2210, 2022 WL 16916347, at *1 (3d Cir. Nov. 14, 2022).

dismissed. Plaintiff's official capacity claim against Defendant Wolf for money damages should also be dismissed because it is barred by the Eleventh Amendment.

## I.    LEAVE TO AMEND SHOULD BE DENIED

If a complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile."[54] Here, Plaintiff was advised that his Complaint failed to state a claim upon which relief may be granted and was told that without amendment his Complaint may be dismissed. He was granted leave to amend but did not submit an amended complaint. Therefore, granting another opportunity to amend would be futile.

## V.    RECOMMENDATIONS

Accordingly, it is RECOMMENDED that:

(1)    Plaintiff's Complaint (Doc. 1) be DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted without further leave to amend.

(2)    The Clerk of Court be directed to CLOSE this case.

Date: February 6, 2025                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge

---

[54] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002).

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB R. ENGLE, | ) | CIVIL ACTION NO. 4:24-CV-543 |
| Plaintiff | ) | |
| | ) | (MUNLEY, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MATTHEW J. KIESKI, *et al.*, | ) | |
| Defendants | ) | |

## NOTICE OF LOCAL RULE 72.3

NOTICE IS HEREBY GIVEN that any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Date: February 6, 2025                    BY THE COURT

                                          *s/William I. Arbuckle*
                                          William I. Arbuckle
                                          U.S. Magistrate Judge